IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Luther James Ford, | ) | C/A No. 1:11-775-DCN-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden Robert M. Stevenson III, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Luther James Ford is an inmate at the South Carolina Department of Corrections who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) D.S.C. for a Report and Recommendation on Respondent's motion for summary judgment and return. [Entry #19, #20].  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. [Entry #21].  After Petitioner failed to timely respond, the undersigned issued an order on August 12, 2011 directing Petitioner to advise whether he wished to continue with this case and to file a response by August 26, 2011. [Entry #25].  Petitioner file a timely response in opposition to Respondent's motion. [Entry #29].  Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment [Entry #19] be granted.

I.    Factual Background

Petitioner was indicted in the March 2007 term of court in Marlboro County for the murder of his girlfriend (2007-GS-34-253). [Entry #20-1 at 71–72]. Because Petitioner had a prior voluntary manslaughter conviction from October 9, 1979, the State sought a sentence of life imprisonment without parole (LWOP). [Entry #20-1 at 6]. He was represented by Daniel L. Blake, Esq. and pled guilty on April 7, 2008 to voluntary manslaughter. *Id.* at 3–16. Under South Carolina's two strikes/three strikes law, voluntary manslaughter is a most serious offense that upon a second conviction of a most serious offense, the offender must be sentenced to LWOP. *See* S.C. Code Ann. § 17-25-45(A).[1] Petitioner was sentenced by the Honorable Paul M. Burch to LWOP. [Entry #20-1 at 15]. Petitioner filed no direct appeal.

Petitioner filed a postconviction relief ("PCR") application on August 13, 2008, asserting the following claims, as amended during the PCR hearing:

---

[1] S.C. Code Ann. § 17-25-45(A): (A) Notwithstanding any other provision of law, except in cases in which the death penalty is imposed, upon a conviction for a most serious offense as defined by this section, a person must be sentenced to a term of imprisonment for life without the possibility of parole if that person has either: (1) one or more prior convictions for: (a) a most serious offense; or (b) a federal or out-of-state conviction for an offense that would be classified as a most serious offense under this section; or (2) two or more prior convictions for: (a) a serious offense; or (b) a federal or out-of-state conviction for an offense that would be classified as a serious offense under this section. (B) Notwithstanding any other provision of law, except in cases in which the death penalty is imposed, upon a conviction for a serious offense as defined by this section, a person must be sentenced to a term of imprisonment for life without the possibility of parole if that person has two or more prior convictions for: (1) a serious offense; (2) a most serious offense; (3) a federal or out-of-state offense that would be classified as a serious offense or most serious offense under this section; or (4) any combination of the offenses listed in items (1), (2), and (3) above.

(1)    Ineffective assistance of counsel for
    (a)    failing to file an appeal;
    (b)    failing to advise Petitioner that if he went to trial he could have requested a jury charge on a lesser offense (i.e., manslaughter or involuntary manslaughter);
    (c)    failing to advise about the "paper waiving [his] rights to trial;"
    (d)    failing to provide copies of discovery materials; and
    (e)    failing to object when the plea judge stated that murder and manslaughter "carried the same amount of time."
(2)    Sixth and Fourteenth Amendments, U.S. Constitution.
(3)    Article I, sections 3 and 14, S.C. Constitution.
(4)    Involuntary guilty plea.

[Entry #20-1 at 17–24].

An evidentiary hearing was held on January 16, 2009 before the Honorable John M. Milling, at which Petitioner testified and was represented by Charles T. Brooks III, Esq. [Entry #20-1 at 43–62]. By order dated February 6, 2009, Judge Milling denied PCR relief. [Entry #20-1 at 63–69]. Petitioner did not file a Rule 59(e), SCRCP, Motion to Alter or Amend.

Petitioner appealed the denial of his PCR application, which was perfected on February 3, 2010 with a *Johnson*[2] Petition for Writ of Certiorari filed by M. Celia Robinson, Esquire of the South Carolina Commission on Indigent Defense Office, Division of Appellate Defense. [Entry #20-2]. Petitioner's counsel asserted that the

---

[2] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

petition was without merit and requested permission to withdraw from further representation. *Id.* at 12. On March 3, 2010, Petitioner file a pro se brief. [Entry #20-4].

On March 16, 2011, after careful consideration of the entire record as required by *Johnson*, the South Carolina Supreme Court denied the petition and granted counsel's request to be relieved. [Entry #20-5]. The remittitur was issued on April 4, 2011. [Entry #20-6]. This federal habeas petition followed.

II.    Discussion

A.    Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following grounds:

Ground One:        Ineffective Assistance of Counsel

> Supporting facts: The applicant have suffered a miscarriage of justice and his conviction only stands due to the coerced by his defense counsel of due process and equal protection in the state courts, in multiple and gross violation of the United States Supreme court precedents and the United States constitution, that constitutes an outrage of mockery of justice that federal courts who sworn to uphold the United States constitution should not tolerate.

> Applicant contends his trial counsel failed to investigate both factual and legal matter to determine if defense can be developed. It is definitive objective description of the competency normally demanded of counsel in certain aspects of their service. And with the discretion the courts should admonish that if the right to counsel guaranteed by the constitution is to serve its purpose, defendant can not be left to the mercies of incompetent counsel. Judges should strive to maintain proper standards of performance by attorneys who are representing defendant's in criminal cases in their courts. Example. Petitioner's case is one of clear and plain manifest injustice, not only of his plea trial but also there after to a gross degree. Petitioner's plea trial was extremely, unfair or served any degree of justice, as chief Justice.

Ground Two:          No Direct Appeal was Perfected

Supporting facts:  The petitioner was entitled to a belated appeal where plea counsel did not advise petitioner of his right to appeal and counsel failed to perfect an appeal on petitioner's behalf. By his application, petitioner asserted that his plea counsel ineffectively failed to advise him of his right to an appeal and failed to perfect an appeal on his behalf. Plea counsel offered no testimony that he did explain his appeal right to petitioner. In determining whether an attorney should consult with the criminal defendant concerning an appeal, the totality of the circumstances must be considered Id. In examining the totality of the circumstances, courts should consider; (1) that a rational defendant would want to appeal for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonable demonstrated to counsel that he was interested in appealing.

Ground Three:        Trial counsel failed to advise the applicant that, if he went to trial, he could have requested a jury charge on a lesser offense, i.e. manslaughter or involuntary manslaughter.

Supporting facts:  The petitioner was entitled to relief where plea counsel had failed to advise petitioner that, if he proceeded to a jury trial, his attorney cold request a jury charge on the lesser included offense of involuntary manslaughter so that he could have been convicted only of the lesser and he would not have been subject to the life without possibility of parole sentence.

Ground Four:          Trial counsel failed to advise the applicant that, if he went to trial, he could have requested "a jury charge on a lesser offense, i.e., manslaughter or involuntary manslaughter.

Supporting facts:  Petitioner testified that he plea guilty to voluntary manslaughter charge, but that he did not understand at the time of his guilty plea that the consequences of his plea would be a sentence of life without the possibility of parole. (App. 44, lines 6-7). Petitioner testified that his trial counsel took him back in a room and instructed him to sign a paper. This graduate of the eight grade testified. "I asked counsel what I'm signing, I didn't get no answer. It was down on the desk and counsel put it up on the file cabinet." (Ap. P. 44, lines 14-20). Petitioner testified that he signed the paper, without any understanding of what he was signing. (App. p. 49, lines 1-2). Petitioner testified that when he was brought to court, he did not know that he was there to enter a guilty plea. The applicant contends due to his illiteracy to the Law he was entitled to rely upon his counsel to make reasonable decision. Pursuant to U.S. v. Dewalt, 92 F. 30 1209 without some

authoritative guidance the defendant did not understand the trial process counsel failure to advise the applicant of his appeal rights.

[Entry #1 at 5–11; #1-1 at 3–5].

B.    Standard for Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue

for trial. *See* Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

      C.      Habeas Corpus Standard of Review

            1.      Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather,

that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 2.  Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254 ("Section 2254"). This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a.  Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)  (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—
>
> >  (A)  the applicant has exhausted the remedies available in the courts of the State; or

(B)      (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)      An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim

as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[3] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983)*; Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

---

[3]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default,[4] is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the

---

[4]If a petitioner procedurally bypasses his state-court remedies, he is procedurally barred from raising them in federal court.

docket will allow, and while the attention of the appellate court is focused
on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for
noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged
constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at
533 (*quoting Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  When a petitioner has failed
to comply with state procedural requirements and cannot make the required showing of
cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v.
Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is
precluded by state rules from returning to state court to raise the issue, he has
procedurally bypassed his opportunity for relief in the state courts and in federal court. A
federal court is barred from considering the filed claim (absent a showing of cause and
actual prejudice). In such an instance, the exhaustion requirement is technically met and
the rules of procedural bar apply.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991);
*Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363
(4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may
consider claims that have not been presented to the South Carolina Supreme Court in

limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

      D.     Analysis

          1.     Procedurally-Barred Grounds

As an initial matter, Respondent contends that all of Petitioner's grounds raising ineffective assistance of counsel (i.e., all grounds other than involuntary guilty plea) are procedurally-barred to the extent that they were not raised in a direct appeal or PCR appeal. The undersigned agrees that the procedural bar applies to Grounds One and Two. In Ground One, Petitioner alleges ineffective assistance of counsel for failing to investigate factual and legal matter to determine if a defense could be developed. In Ground Two, Petitioner alleges counsel was ineffective for failing to advise him of his appeal rights and failing to appeal.

These grounds were not argued during the PCR proceeding, nor addressed by the order denying PCR relief. Petitioner did not seek a ruling by filing a Rule 59(e) motion. Under state court procedure, the state supreme court has held that such issues are not preserved for consideration on appeal. *Marlar*; *Simpson v. Moore*, 627 S.E.2d 701, 708 n.3 (S.C. 2006); *Harris v. State*, 581 S.E.2d 154 (S.C. 2003).

Therefore, to the extent that Grounds One and Two were not raised in Petitioner's direct or PCR appeal, they were not fairly presented to the South Carolina appellate courts and are procedurally-barred from federal habeas review. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).

### 2.     Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of Grounds One and Two. In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, they are procedurally barred from consideration by this court and should be dismissed. *Id.*; *see* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor

prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (In order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.); *Wainwright,* 433 U.S. at 88–91; *Murray*, 477 U.S. at 496; *Rodriguez*, 906 F.2d at 1159 (a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent") (*citing Murray*); *Sawyer v. Whitley*, 505 U.S. 333, 348 (1992); *Bolender v. Singletary*, 898 F. Supp. 876, 881 (S.D. Fla. 1995).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the State's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on Grounds One and Two. Petitioner had a guilty plea in which he raised no objection, had a direct appeal, a PCR hearing, and an appeal from the PCR in which to raise these issues. However, he failed to raise them, raise them properly, or preserve the issues for habeas review. Petitioner cannot establish cause and prejudice because he has consistently abandoned opportunities to preserve these issues.

In the alternative, Petitioner must show a miscarriage of justice. In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298,

327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of actual innocence.

During the guilty plea colloquy, the Solicitor recited the following facts, which Petitioner conceded in his guilty plea colloquy were accurate: On November 28, 2006, Petitioner stabbed his girlfriend Patricia Thompson to death. They had lived together in the past, and were still dating, although on the date of the incident, they were not living together. The couple had been to town and had been drinking. After returning to her residence, an argument ensued and Petitioner obtained a knife and stabbed Ms. Thompson 39 times. She died as a proximate result of the stab wounds, and police found her the lying on her bed with her arms almost in a defensive posture. Petitioner left the residence and locked the door and subsequently admitted to two witnesses that he thought he had killed her.

Further, Petitioner admitted his guilt to voluntary manslaughter at the guilty plea hearing, as follows:

| | |
|---|---|
| The Court: | ... The original[] indictment is for murder. You have indicated through counsel and through this plea sheet that you are going to plead guilty to a lessor-included offense of voluntary manslaughter which has the same elements as the crime of murder except it does have the requirement of malice aforethought. Normally, for voluntary manslaughter you could receive up to 30 years, and I believe in this case unless y'all correct me, with the prior record it qualifies it for life without parole. |
| Solicitor: | That is correct, your Honor. |
| The Court: | So with a basic understanding of the charge I ask you, do you understand what you're charged with and the possible penalty? |
| Petitioner: | Yes, sir. |

| | |
|---|---|
| The Court: | You want to go forward at this time and plead guilty to the voluntary manslaughter? |
| Petitioner: | Yes, sir. |
| The Court: | Let me talk with you about your constitutional rights. You fully understand by entering this plea that you waive your constitutional right to a jury trial? |
| Petitioner: | Yes, sir. |
| The Court: | If you had a trial the State would have to prove your guilt beyond a reasonable doubt and convince 12 jurors unanimously of your guilt. Through your attorney you have the right to cross-examine the State's witnesses and put up your own defense and witnesses. You could testify at your own defense, but on the other hand, now, you've got a constitutional right to remain silent. |
| | So you could not testify. If you didn't it couldn't be held against you, and I would tell the jury that. You need to understand that you are presumed innocent and that presumption of innocence would even remain with you throughout a trial and would only end if a jury did convict you. |
| | If a jury did convict you, you would have a right to appeal just as you can appeal a guilty plea as long as you file a Notice of Appeal within ten days of sentencing. Of course, now, you would have to have sufficient grounds for appeal to prevail later one. In other words, you would have to have sufficient reasons to think that you could prevail on appeal if something was done wrong. That's your basic rights. Do you understand them? |
| Petitioner: | Yes, sir. |
| The Court: | Got any questions? |
| Petitioner: | No, sir. |
| The Court: | You don't want a trial at this time? You're waiving your trial rights? |
| Petitioner: | Yes, sir. |
| The Court: | Has anybody promised you anything, held out any hope of reward or threatened you in any way? In other words to get you [to] enter this plea? |
| Petitioner: | No, sir. |
| The Court: | Are you under the influence of any medication, any drugs or any alcohol or combination of anything that could have been affecting your understanding? |
| Petitioner: | No, sir. |
| The Court: | You understand what you're doing? |
| Petitioner: | Yes, sir. |
| The Court: | You don't have any mental or physical problems that is causing you any kind of problem today whereby you're not understanding? |
| Petitioner: | No. |

| The Court: | Are you satisfied with Mr. Blake's advice on this matter? |
| Petitioner: | Yes, sir. |
| The Court: | Has he answered all of your questions? |
| Petitioner: | Yes, sir. |
| The Court: | Are you entering this plea of your own free will and accord? |
| Petitioner: | In a way. |
| The Court: | All right. If you don't mind explain that to me. Is anybody forcing you to do this? |
| Petitioner: | No, sir. |
| The Court: | If it's any problem, now, tell me about it now. |
| Petitioner: | No, no problem. |
| The Court: | I find your plea is freely, voluntarily and intelligently entered into, you had the services of a competent attorney whom you told me you are satisfied within his advice and services. I therefore accept the plea and we will now hear from the State. |

[Entry #20-1 at 8–11].

The foregoing excerpt from the guilty plea colloquy reflects that Petitioner admitted he committed the crimes of voluntary manslaughter and admitted the facts as recited by the Solicitor. In light of the foregoing, Petitioner cannot show actual innocence, and therefore, the procedural bars apply as to Grounds One and Two.

3.    Merits Review

Petitioner's remaining grounds raise the same essential issue, to wit: that counsel was ineffective for failing to advise him that if he went to trial he could have requested a jury charge on a lesser offense that carried a sentence of less than LWOP. Petitioner lists manslaughter and involuntary manslaughter as the possible lesser-included offenses. [Entry #1-1 at 4]. Stated differently, Petitioner argues that counsel failed to advise him that the consequence of his plea to voluntary manslaughter would be LWOP, and therefore, that his guilty plea was involuntary.

Respondent argues that Petitioner did not present evidence regarding the grounds raising this issue so the procedural bar should apply. The undersigned disagrees. Petitioner primarily argued before the PCR court that his guilty plea was involuntary and he received ineffective assistance regarding the LWOP sentence.

As an initial matter, Petitioner was advised of the lesser-included offense of voluntary manslaughter, because that is the offense to which he pled guilty. Therefore, a jury charge on the lesser-included offense of voluntary manslaughter would not have helped him. There is no evidence suggesting that counsel could have requested a charge on involuntary manslaughter. The evidence showed that Petitioner stabbed his girlfriend 39 times after they had an argument. Petitioner cannot show deficient performance or prejudice under *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), for failing to advise of possible lesser-included offenses where there exists no reasonable probability that a possible defense would have succeeded at trial. *See Savino v. Murray*, 82 F.3d 593, 599 (4th Cir. 1996).

Addressing Petitioner's allegations as to this claim, the PCR Court found as follows:

> The Applicant stated he and plea counsel had several meetings in which they discussed the State's evidence and his version of events. The Applicant stated he maintained that he wanted to go to trial until the day of the plea hearing. The Applicant stated that he knew he was facing a sentence of life imprisonment without parole (LWOP) if he was unsuccessful at trial, but that he did not know he would still receive a LWOP sentence if he pled guilty. The Applicant testified he did not understand everything that was happening at the plea hearing but stated he did not explain this to the plea judge because he lost his voice.

Plea counsel testified he and the Applicant had several meetings in which they reviewed the discovery materials and discussed the Applicant's explanation of what happened on the day in question. Plea counsel testified they also discussed the fact that the State had served notice of their intent to seek a mandatory sentence of LWOP. Plea counsel testified the Applicant initially vacillated between either a jury trial or a guilty plea. Plea counsel testified he did not recommend either option but that the Applicant— because he was embarrassed—ultimately made the decision to plead guilty. Plea counsel stated he explained to the Applicant that he would receive a LWOP sentence if he pled guilty and that the Applicant understood their discussions. Plea counsel stated that, on the day of the guilty plea, the Applicant did not waver from his decision to plead guilty. Plea counsel stated the Applicant knew the State had a strong case and that it would be a difficult case to win at trial.

Regarding the Applicant's claims of ineffective assistance of counsel, this Court finds the Applicant has failed to meet his burden of proof. This Court finds the Applicant's testimony is not credible, while also finding plea counsel's testimony is credible. This Court further finds plea counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation.

The Applicant told the plea judge that he wanted to plead guilty to voluntary manslaughter. (Plea transcript, p.7). The Applicant also told the plea judge that he understood the trial rights he was waiving in pleading guilty, was satisfied with counsel, and had not been coerced in any way. (Plea transcript, pp. 7–9).

This Court finds the Applicant failed to meet his burden of proving plea counsel did not properly advise him that he would receive a LWOP sentence if he pled guilty. This Court specifically finds credible plea counsel's testimony that they had discussed this very issue. The Applicant admitted on cross-examination that he knew he was facing a LWOP sentence if he was unsuccessful at trial. This Court notes that, on the sentencing sheet signed by the Applicant, the box for "Without Negotiations or Recommendation" is checked but the phrase "Mandatory Life Sentence" is written above plea counsel's signature. Further, the State announced at the plea hearing it was seeking a mandatory LWOP sentence and entered the LWOP notice into evidence. (Plea transcript, p. 4). The plea judge noted this conviction qualified the Applicant to receive a LWOP sentence and the Applicant stated he wanted to plead guilty. (Plea

transcript, pp.6–7). The Applicant did not object when the State again mentioned the mandatory LWOP sentence after the recitation of the facts. (Plea transcript, p. 11). This Court concludes the Applicant was aware he was pleading guilty to voluntary manslaughter in exchange for a mandatory LWOP sentence.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the *Strickland* test—that plea counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that plea counsel committed either errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of *Strickland*—that he was prejudiced by plea counsel's performance. This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. *See Frasier v. State*, 351 S.C. at 289, 570 S.E.2d at 174.

[Entry #20-1 at 65–67].

The PCR Court had the opportunity to view the witnesses and judge their credibility accordingly, and found trial counsel's testimony to be credible. The PCR Court's determination of this issue is supported by the record of the guilty plea proceedings, the LWOP Notice that was served on Petitioner prior to his guilty plea, and the sentencing sheet signed by Petitioner, which indicates the plea was without recommendations or negotiations and that the sentence would be a mandatory life sentence.

As the PCR Court noted, in addition to the sentencing sheet, the State announced at the plea hearing it was seeking a mandatory LWOP sentence and entered into evidence the LWOP notice provided to Petitioner on March 14, 2007. [Entry #20-1 at 6]. The plea judge noted this conviction qualified Petitioner to receive a LWOP sentence, and Petitioner stated he wanted to plead guilty. *Id.* at 8–9. Petitioner did not object when the

State again mentioned the mandatory LWOP sentence after the recitation of the facts. *Id.* at 13. The PCR court concluded that Petitioner was aware he was pleading guilty to voluntary manslaughter in exchange for a mandatory LWOP sentence based on the entire record and trial counsel's credible testimony. The PCR court found not credible Petitioner's testimony that he was coerced into pleading guilty and that he did not know he would receive an LWOP sentence.

The undersigned can find no basis in the record on which to overturn the state court decision. The record reflects that the Petitioner voluntarily and knowingly entered his plea of guilty in open court. Petitioner specifically stated that he understood he was pleading guilty to the voluntary manslaughter charge; that by pleading guilty he understood that he would be sentenced to LWOP; and that he had been able to discuss with and have his lawyer answer all questions Petitioner had. Petitioner testified that he was satisfied with the work of his lawyer, that he understood the nature of the offenses that he was charged with and the possible penalty. Petitioner also testified that he was entering the plea freely and voluntarily. Petitioner affirmed that he was giving up his right to remain silent, to a trial by a jury, to confront the victim and witnesses, to have the state convince the jury of his guilt beyond a reasonable doubt, and that no one had promised, threatened, intimidated, or forced him to plead guilty. In addition to this testimony wherein Petitioner admitted his guilt, counsel's testimony at Petitioner's PCR hearing also fails to reveal any ineffective assistance of counsel. The United States Supreme Court has ruled that "[r]epresentations of the Defendant, his lawyer and the prosecutor at

[arraignment], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings...The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Here, Petitioner has not provided the court with any evidence that he did not intend to plead guilty to the charges, under oath to the presiding judge, without objection in open court. Statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such as ineffective assistance of counsel. *Via v Superintendent, Powhatan Correctional Center*, 643 F.2d 167, 171 (4th Cir. 1981). Petitioner has provided no evidence to show ineffective assistance of counsel in his case. Rather, the record shows that Petitioner had been advised by trial counsel, and that the consequences of his plea were fully explained to him by the court. The record also clearly shows that Petitioner was given every opportunity to change his mind, and he denied he had been coerced or forced to act in any manner concerning his plea. Hence, the record shows that Petitioner chose to enter a plea of guilty, and did so freely and voluntarily. *Little v. Allsbrook*, 731 F.2d 238 (4th Cir. 1984); *U.S. v. Futeral*, 539 F.2d 329 (4th Cir. 1976).

In sum, Petitioner has failed to show the PCR Court unreasonably applied United States Supreme Court precedent in deciding this issue. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR Court reached an unreasonable factual determination of this issue given the evidence and record before it. *Evans v. Smith*, 220

F.3d 306, 312 (4th Cir. 2000) (federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding); *Williams v. Taylor*, 529 U.S. 420 (2000); *Bell v. Jarvis*, 236 F.3d 149, 157-158 (4th Cir. 2000); 28 U.S.C. § 2254(e)(1) (determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence). Therefore, Petitioner has failed to overcome the deferential standard of review accorded the state PCR Court's determination of this issue. As a result, Petitioner has failed to show he is entitled to federal habeas corpus relief.

III.    Conclusion

For the foregoing reasons, the undersigned recommends Respondent's motion for summary judgment [Entry #19] be granted.

IT IS SO RECOMMENDED.

December 21, 2011                         Shiva V. Hodges
Florence, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**